**DPC GENERAL CONTRACTORS, INC., etc., et al., Plaintiffs,**

v.

**The COBO COMPANY, INC., etc., et al., Defendants.**

**No. 87–1160–CIV.**

United States District Court, S.D. Florida, Miami Division.

June 28, 1989.

**368**

Neil Flaxman, Coral Gables, Fla., for plaintiffs.

Charles F. Mills, So. Miami, Fla., for defendants.

### MEMORANDUM OPINION

SPELLMAN, District Judge.

### ORDER GRANTING SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon the parties' Cross Motions for Summary Judgment.

### I. BACKGROUND

On June 18, 1987, Plaintiff, DPC GENERAL CONTRACTORS, INC. ("DPC"), brought this action against Defendant, THE COBO COMPANY, INC. ("COBO"), and its surety, HARTFORD FIRE INSURANCE COMPANY ("HARTFORD"), under the Miller Act, 40 U.S.C. §§ 270a *et seq.* DPC was seeking $28,800.00 against COBO and HARTFORD based upon the alleged non-payment to DPC by COBO under the terms of a subcontract between COBO and DPC.

After this action was filed, COBO paid DPC all amounts due it except for the sum of $3,800.00 which COBO contends is not owed DPC. DPC contends that it is due the sum of $3,800.00 from COBO, plus interest on contract amounts not timely paid to DPC.

COBO entered into a contract on August 15, 1986, with the Department of the Air Force to remove certain boilers at Homestead Air Force Base. COBO, as general contractor, and DPC, as subcontractor, entered into a sub-contract on October 15, 1986. DPC was to remove and dispose of asbestos as per plans and specifications for "central boilers replacement with individual boilers." Those plans and specifications are part of the contractual agreement between COBO and the Air Force.

The contract between DPC and COBO provides in its Assumption of Responsibility clause, that DPC assumes toward COBO the same contractual relationship and duties that COBO assumes to the Air Force. COBO's contract with the Air Force required COBO to employ a certified industrial hygienist as an independent contractor for the purpose of directing asbestos safety pertaining to the asbestos removal section of COBO's general contract. The subcontract agreement between DPC and COBO provides for asbestos removal as per those plans and specifications, and the parties agree that the services of the certified industrial hygienist were required under the terms of the contract. The parties also agree that the sum of $3,800.00 was reasonable for these services.

COBO backcharged DPC with the sum of $3,800.00 by change order dated February 27, 1987. Thus, only two issues remain in dispute: 1) whether or not COBO was justified in backcharging DPC with $3,800.00— in other words, who was required under the contract to pay for the services of the industrial hygienist; and 2) whether DPC is entitled to interest on amounts allegedly due and owing at the time this action was filed. The prevailing party is entitled to reasonable attorney's fees and expenses.

### II. DISCUSSION

#### A. *The $3,800.00 Backcharge Fee*

■ COBO argues that the contract provides that DPC has assumed to COBO the

same duties that COBO has assumed to the Air Force. In other words, COBO argues that DPC contractually bound itself to assume COBO's duties to the Air Force. Because COBO was required by the Air Force to employ the industrial hygienist for $3,800.00, this duty of COBO to the Air Force became the duty of DPC to COBO and thus COBO properly backcharged DPC for $3,800.00.

DPC argues that although DPC assumed the same obligations as COBO did in accordance with COBO's contract with the Air Force, that duty is limited by the extent of the work contracted for. DPC and COBO contracted for the removal and disposal of asbestos by DPC. These contractual provisions are specified in the contract in § 302 (removal of asbestos) and § 305 (disposal of asbestos). The air monitoring provision that calls for an industrial hygienist, § 306, is a separate provision and was not referred to in the contract between COBO and DPC. Therefore, DPC argues that its duties and responsibility were those explicitly contracted for—removal and disposal of asbestos—and did not include the air monitoring requirements.

An ambiguity in a contract should be resolved against the drafter of the agreement. *Gaines v. MacArthur*, 254 So.2d 8 (Fla. 3d DCA 1971). Here, it is unclear whether the parties intended that DPC should have the responsibility of hiring and paying for the industrial hygienist because the contract does not specifically refer to the air monitoring provision of COBO's agreement with the Air Force. The contract only mentioned the removal and disposal of the asbestos which are listed in separate provisions of the contract. The subcontract therefore must be read to have excluded any duties under the air monitoring provision. Accordingly, this Court finds that DPC's duties under the subcontract were limited to the duties specified under the removal provision and the disposal provision, and did not include the hiring or payment of the industrial hygienist. Thus, the backcharge of $3,800.00 against DPC was improper.

## B. Prejudgment Interest

DPC completed its sub-contract on January 29, 1987, and on April 8, 1987, notified COBO that payment was 60 days past due. DPC initiated this action on June 29, 1987. On January 19, 1988, COBO paid DPC the sum of $19,000.00. 90% of this amount was due to DPC on February 2, 1987; 10% was due to DPC on September 17, 1987. DPC is claiming interest on these amounts.

COBO argues that this demand is misplaced, because DPC's complaint does not seek prejudgment interest independent of the $3,800.00. Therefore, COBO contends that if DPC fails to recover the principal sum of $3,800.00, it cannot recover any interest.

The pretrial stipulation in this case clearly sets forth the claims of the parties, and thus, supercedes the Complaint. Paragraph 5F of the Pretrial Stipulation, under the section labeled "Stipulated Facts Which Require No Proof at Trial," states that "the only payment in controversy is the amount of $3,800.00." However, in Paragraph 8A, in the section labeled "Statements of Issues of Fact Which Remain to be Litigated—Plaintiff's Contentions," the Plaintiff contends "it is due the sum of $3,800.00, together with interest on unpaid amounts due from the date that Plaintiff demanded payment, which was April 8, 1987." Although inartfully drawn, this is clearly a request for interest on the total amount which Plaintiff claims was due and owing on April 8, 1989. This Court therefore holds that Defendant was on notice that this claim was being made.

COBO goes on to state that such a claim is improper under 40 U.S.C. § 270a, because the liability of a surety under a Miller Act payment bond is restricted to unpaid labor and materials and the defendant surety cannot be liable for any alleged interest damages because of purported late payments. This Court discussed the issue of damages caused by delay in *W.S.A., Inc. d/b/a Harmon v. Stratton and Fidelity and Deposit Co.*, 680 F.Supp. 375 (S.D.Fla. 1988), and stated that damages stemming from delay were not recoverable under the Miller Act. *Id.* at 377. These damages,

however, were clearly not meant to include *prejudgment interest*, but rather were meant to encompass damages such as increases in costs.

The Eleventh Circuit held although damages for delay were not recoverable under the Miller Act, prejudgment interest could be awarded. *Seminole Sheet Metal Co. v. SCI, Inc.*, 828 F.2d 671, 677–678 (11th Cir. 1987). The Court went on to say that because "the Miller Act does not provide any explicit standards for awarding prejudgment interest, it is treated as incorporating state law on this issue." *Id.*

■ COBO argues that Florida law clearly contemplates the award of a principal amount of damages *before* the purely ministerial duty of adding interest. Thus, because no principal amount of damages is due DPC, DPC cannot receive interest.

Under Florida law, prejudgment interest runs from the date a liquidated debt is due, even if a genuine dispute exists as to whether the debt is in fact due. *Cooper v. Alford*, 477 So.2d 31 (Fla. 1st DCA 1985). DPC originally sued for the total amount of $28,800.00. The parties entered into a partial settlement wherein COBO paid DPC the sum of $19,000, as partial payment. The Partial Release that was executed upon that settlement specifically did not release COBO from the pending claims of DPC, but was only accepted as a partial payment for the amount due. However, the claims of DPC against COBO were diminished to the extent of the principal amount of $19,000.

Subsequently, in the pretrial stipulation, the parties agreed that the only amount still due and owing is the principal amount of $3,800. Prejudgment interest is not, in and of itself, recoverable, but rather is calculated on the principal amount due. Here, the only principal amount due is the $3,800. Thus, DPC is only entitled to prejudgment interest on that amount from the date that amount became due.

COBO charged back the $3,800 to DPC in its Change Order dated February 23, 1987. Thus, this Court holds that the $3,800 was due and owing to DPC from February 23, 1987, and interest due on the $3,800 shall be calculated from that date.

## C. Attorneys' Fees

Both parties agree that the prevailing party is entitled to attorneys' fees. The only issue is dispute concerned the backcharged amount of $3,800.00. DPC prevailed on that issue and is thus entitled to attorneys' fees. Accordingly, it is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment is GRANTED. Plaintiff, DPC, is entitled to $3,800, plus prejudgment interest on that amount from February 23, 1987, plus attorneys' fees.

It is further ORDERED that DPC shall submit a proposed final judgment to this Court within 10 days of the date of this Order. Additionally, under separate motion, DPC shall file its Motion for Attorneys' Fees along with counsel's affidavit.

This Court must take the opportunity to point out the absurdity of submitting this type of action to the federal courts, which are already overburdened with all kinds of both civil and criminal cases. This is exactly the type of case, in this Court's opinion, that should be submitted to binding arbitration. The parties to such contracts could simply include a binding arbitration provision in the contract, and avoid the expense in both time and money that this type of litigation entails. This would be both in the interest of judicial economy, and in the parties' own best interests.

DONE AND ORDERED.